UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID POWELL, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>Crypto Traders Management, LLC, et al.,<br><br>  Defendants. | Case No. 2:20-cv-00352-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiffs, David Powell and Merav Knafo, have filed an application for writ of attachment (Dkt. 15).[1] For the reasons explained below, the Court will order Defendants Crypto Traders Management, LLC, Shawn Cutting and Courtney Lata

---

[1] Plaintiffs have also filed a motion for leave to file an amended complaint in which Plaintiffs seek to add the above named third parties as defendants. (Dkt. 14). That motion is not yet ripe and will accordingly not be addressed herein.

MEMORANDUM DECISION AND ORDER - 1

and third parties Janine Cutting, the Lake View Trust, the Crypto Traders Fund LP, and Ash Development, LLC to show cause why a writ of attachment of the property listed in Plaintiffs' Application should not issue. That hearing will be conducted on December 18, 2020 at 10:00 a.m. via Zoom. The instructions to access the video conference will be issued separately. The Court will also grant the Plaintiff's motion to issue a writ of attachment immediately.

## BACKGROUND

This is an action brought by Plaintiffs David Powell and Merav Knafo as investors in a cryptocurrency investment fund against the fund and the fund's managers. Plaintiffs allege that Defendants Crypto Traders Management, LLC; Shawn Cutting, and Courtney Lata lured Plaintiffs into depositing money into a public fund they claimed to be managing and investing in altcoin offerings, and then refused to pay out the investments and earnings as promised.

Powell invested $531,933.00 with CTM between November 4, 2018 and July 18, 2019. Powell did not sign an express contract with CTM regarding the management of his funds. Powell requested and received three separate payouts from CTM totaling $50,000 between August 4, 2019 and January 10, 2020. On January 13, 2020 Powell requested an additional $100,000 payout by April 15, 2020. Cutting confirmed on January 23, 2020 that CTM would issue the

withdrawal, but Powell never received the payout. On May 16, 2020, Powell requested that Cutting close his account and pay out the entire balance, however, he has not received a payout as requested.

Knafo invested $109,581.94 with CTM between July 28, 2019 and November 4, 2019. Knafo requested a withdrawal of her investment on February 11, 2020 but did not receive a payout. On March 20, 2020, Knafo signed a service agreement with CTM which expressly provided that CTM would manage all funds deposited in exchange for 30% of the earnings generated each reporting period. (Dkt. 15-2 at 9). The parties to the agreement were Knafo, CTM, CTM employees and Shawn Cutting. Despite at least three additional requests for payout, Knafo has not received a payout of her investment from CTM.

After investing funds with CTM, Plaintiffs received monthly updates regarding their investments from CTM. The updates summarized the investment activity undertaken with the funds deposited with CTM and showed rapid growth in the overall fund, and their individual accounts. Plaintiffs allege that through the monthly updates, email exchanges, and other communications, Defendants repeatedly represented that the funds could be withdrawn at any time. In March 2020, Plaintiffs received a newsletter in which Cutting admitted that he was falsely reporting account values to investors. Cutting further explained that based on

current market conditions, it would be very difficult to sell without taking a big loss, and that CTM could not provide a time frame for when to expect a withdrawal.

On May 13, 2020, Knafo received an update on her account that reflected a total principal investment of $109,581.00 and an account value of $119,375.94. Powell received an update on his account on May 10, 2020 that reflected a total principal investment of $513,933.00 and an account value of $603,750.35. These statements form the basis for the calculation of the debt owed to Plaintiffs by the Defendants.

## DISCUSSION

Plaintiffs request a writ of attachment and a show cause hearing, as authorized by Idaho statutory law, pursuant to Federal Rule of Civil Procedure 64. Specifically, Rule 64(a) authorizes district courts to employ state law remedies for attachment. Fed. R. Civ. P. 64(a), (b).

**1.     Application for Writ of Attachment**

Plaintiffs seek to attach property and accounts held by Defendants Lata, Cutting, and CTM. Plaintiffs also seek to attach property they allege Defendants purchased through a family member and entities the Defendants own, collectively referred to here as the "Third Parties." The Third Parties include Janine Cutting, Cutting's wife and Lata's mother; the Lake View Trust, a spendthrift trust of which

Janine and Cutting are co-trustees; the Crypto Traders Fund LP, a limited partnership of which CTM is believed to be a general partner; and Ash Development, LLC, a limited liability company of which Lata is the managing member. Plaintiffs have filed a motion for leave to file an amended complaint to add these parties as defendants in this action. Under Idaho's fraudulent transfer statutes, plaintiffs may seek to attach property fraudulently transferred to a third party. *See Eta Compute, Inc. v. Semones,* No. 1:18-cv-00552-BLW, 2019 WL 267702, at *3 (D. Idaho Jan. 18, 2019).

### A.   Idaho Statutes relating to prejudgment writs of attachment

Under Idaho statutory law, before a writ of attachment may issue, plaintiffs must demonstrate: (1) that the defendant is indebted to the plaintiff; (2) the action is upon a contract, express or implied, for the direct payment of money; (3) the contract is not secured by any mortgage, deed of trust, security interest or lien upon real or personal property; and (4) the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant. *See* Idaho Code 8-502(a).

After a plaintiff files an application for a writ of attachment, the court shall "examine the complaint and affidavit, and if satisfied that they meet the requirements of subdivision (a), it shall issue an order directed to the defendant to

show cause why a writ of attachment should not issue." Idaho Code § 8-502(b). In addition, the Court may "prior to a hearing" issue a writ of attachment "if probable cause appears . . .[b]y reason of specific facts shown the property specifically sought to be attached is a bank account subject to the threat of imminent withdrawal . . . or [the property] is in immediate danger of concealment[] or removal from this state, or of sale to an innocent purchaser, and the holder of such property threatens to destroy, harm, conceal, remove it from the state, or sell to an innocent purchaser." Idaho Code § 8-502(c)(3). Finally, "[u]pon the hearing on the order to show cause, the court shall consider the showing made by the parties appearing, and shall make a preliminary determination of whether there is a reasonable probability that the plaintiff will prevail in its claim." Idaho Code § 8-502(e).

    **B.**    **Idaho's Fraudulent Transfer Statutes**

Idaho Code § 55-913(1)(a) provides that "[a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith the actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Subsection (2) sets forth several factors that are indicia of the actual intent to hinder, delay or defraud, including (1)

whether the debtor transferred the assets to an insider; (2) whether the transfer resulted in the debtor's insolvency; (3) whether the debtor retained possession of the property after the transfer; (4) whether the debtor was threatened with suit prior to transferring the property, and whether the debtor removed or concealed assets. Idaho Code § 55-913(2).

In an action for relief against a transfer pursuant to Section 55-913, a creditor may obtain, among other things, "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law[.]" *See* Idaho Code 55-916(1)(b). A creditor may also obtain "avoidance of the transfer," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property" and "any other relief the circumstances may require." Idaho Code 55-916(1)(c).

### C. The Show Cause Hearing

Plaintiffs have met the standard set forth in Idaho Code section 8-502(b) for this Court to order a show cause hearing related to the property defendants hold, and the property transferred to the Third Parties. Based on the materials submitted with Plaintiff's application, the Defendants are indebted to Plaintiff Powell for $603,750.35 and Plaintiff Knafo for $119,375.94 through their receipt and subsequent management of investment funds on behalf of the Plaintiffs. This debt

is upon a contract, express or implied, for the direct payment of money;[2] and the debt is not secured by any mortgage, deed of trust, security interest, or lien. Further, there is no evidence that the attachment is sought, or that the action is prosecuted, to hinder, delay or defraud any other defendants' creditors.

Next, regarding the property transferred to the Third Parties on the day of the show cause hearing, the circumstances and timing of these transfers suggest an actual intent to hinder, delay, or defraud. *See* § 55-913(2). Among other things, the property was transferred to family and entities controlled by the Defendants; the Defendants appear to have maintained control over the property after the transfers, and some of the property was transferred after the Defendants were threatened with suit. *See* Idaho Code §§ 55-910(8); 55-910(1), (11). There may be an innocent explanation for all of this, but the evidence before the Court suggests an intent to defraud.

The Court will therefore schedule a show cause hearing in compliance with the requirements of Idaho Code Section 8-502(b) (providing that the hearing "shall

---

[2] The Idaho Supreme Court has held that "[a]n implied in fact contract is defined as one where the terms and existence of the contract are manifested by the conduct of the parties with the request of one party and the performance by the other often being inferred from the circumstances attending the performance." *Clayson v. Zebe*, 280 P.3d 731, 736 (Idaho 2012). Further, when a "defendant has received a benefit which it would be inequitable for him to retain" a contract implied in law, or quasi-contract, exists. *Continental Forest Products, Inc. v. Chandler Supply Co.*, 518 P.2d 1201, 1205 (Idaho 1974).

be no sooner than five (5) days from the issuance thereof, and shall direct the time within which service thereof shall be made upon the defendant[s].")

      **D.**      **The Writ of Attachment**

The next question is whether the Court should issue the writ of attachment before the show cause hearing. A key question is whether plaintiff has shown that the bank accounts sought to be attached are "subject to the threat of imminent withdrawal." Idaho Code § 8-502(c)(3). Plaintiffs argue that "Defendants effectively stole hundreds of thousands of dollars from their investors," formed new entities and transferred investments to the Third Parties to treat as expendable income. In support of this claim, Plaintiffs explain that several of the Third Parties' purchases coincide with Plaintiffs' investments with CTM. (*Mem. Supporting App.*, Dkt. 15-1, at 13–15). Plaintiffs further allege that "[t]here can be no doubt that assets in Defendants' and [Third Parties'] accounts . . . are in imminent danger [of] being withdrawn and concealed" and request an immediate writ of attachment on the bank accounts, crypto exchange accounts, and cold storage accounts.

Given all these facts, the Court concludes that the bank accounts identified are "subject to the threat of imminent withdrawal." Idaho Code § 8-502(c)(3). The Court will therefore issue a writ of attachment immediately.

## ORDER

IT IS ORDERED that Plaintiff's Application for Writ of Attachment (Dkt. 15) is GRANTED. The Court will enter a separate order consistent with this decision.

DATED: December 11, 2020

B. Lynn Winmill
U.S. District Court Judge