UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID POWELL, et al., | Case No. 2:20-cv-00352-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| CRYPTO TRADERS MANAGEMENT, LLC, et al., | |
| Defendant(s). | |

## INTRODUCTION

On January 11, 2021, the Court held a hearing for an Order to Show Cause why a writ of attachment should not issue in accordance with the Court's prior Order (Dkt. 23). The Court will grant the application and will maintain the pre-hearing writ of attachment of the accounts belonging to Cutting and Crypto Traders Management and will now order a prejudgment writ of attachment for real property and vehicles belonging to Shawn Cutting, Crypto Traders Management,

Janine Cutting, and the Lake View Trust. However, the Court will deny the application for the attachment of accounts belonging to Courtney Lata.

## DISCUSSION

Plaintiffs request a pre-judgment writ of attachment against property of the Defendants Shawn Cutting, Courtney Lata, and Crypto Traders Management pursuant to Federal Rule of Civil Procedure 64 and Idaho Code Section 8-502. Plaintiffs also request a pre-judgment writ of attachment against third parties Janine Cutting, the Lake View Trust, the Crypto Traders Fund LP, and Ash Development, LLC. The Court may issue a writ of attachment against a third party if Plaintiffs establish that Defendants fraudulently transferred assets to that third party. Under Idaho's fraudulent transfer statutes, a creditor (here, the Plaintiffs) may obtain "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law." Idaho Code § 55-916. Thus, as the Court interprets these Idaho statutes, Plaintiffs may seek to attach assets fraudulently transferred from a debtor to a third party. *See General Electric Co. v. Chuly Int'l, LLC*, 118 So. 3d 325 (Ct. App. Fla. 2013) (interpreting a Florida statute substantially identical to Idaho's, observing that "[a] prejudgment attachment is available against assets fraudulently transferred from a debtor and held in the name of another").

MEMORANDUM DECISION AND ORDER - 2

### A.     Writ of Attachment

The procedure for obtaining a prejudgment writ of attachment is governed by Idaho Code §§ 8-502 and 8-503. A plaintiff seeking a pre-judgment writ of attachment must demonstrate: (1) that the defendant is indebted to the plaintiff; (2) the action is upon a contract, express or implied, for the direct payment of money; (3) the contract is not secured by any mortgage, deed of trust, security interest or lien upon real or personal property; and (4) the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant. *See* Idaho Code § 8-502(a). The judge must also examine the complaint and affidavit and any other evidence provided to determine whether probable cause appears that something detrimental might happen to the property sought to be attached. *Valley Bank v. Dalton*, 714 P.2d 56, 61 (Idaho Ct. App. 1985). "Upon the hearing on the order to show cause, the court shall consider the showing made by the parties appearing, and shall make a preliminary determination of whether there is a reasonable probability that the plaintiff will prevail in its claim." Idaho Code § 8-502(e).

In this case, there is no dispute that the debt owed is not secured by any mortgage, deed of trust, security interest or lien. There is also no evidence before the Court to suggest that Plaintiffs seek to hinder, delay or defraud any creditor of

the defendant. Therefore, the Court will turn to the remaining statutory requirements: (1) whether the Defendants are indebted to the Plaintiffs based upon a contract for the direct payment of money, and (2) whether the property sought to be attached is in danger of becoming inaccessible to satisfy a future judgment.

### 1.      Defendants CTM and Cutting are indebted to Plaintiffs Upon a Contract for the Direct Payment of Money

The Court finds that Plaintiffs have established that a debt is owed upon a contract for the direct payment of money. There are three types of contractual arrangements: express contracts, implied-in-fact contracts, and contracts implied-in-law. *Continental Forest Products, Inc. v. Chandler Supply Co.*, 518 P.2d 1201, 1205 (Idaho 1974). "Express contracts exist where the parties expressly agree regarding a transaction." *Id.* Implied-in fact contracts exist where 'there is no express agreement[,] but the conduct of the parties implies an agreement from which an obligation in contract exists.'" *Clayson v. Zebe*, 280 P.3d 731, 736 (Idaho 2012). An implied-in-law contract, or quasi contract, is "an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties." *Continental Forest Products, Inc. v. Chandler Supply Co.*,

518 P.2d 1201, 1205 (Idaho 1974). This obligation is treated procedurally as if it were a contract. *Id.*

Here, Plaintiffs have provided evidence that establishes they had either an express oral agreement or an implied in fact contract with CTM and Cutting. CTM provided a copy of the Crypto Traders Management Service Agreement to all clients when they set up an account. (*Decl. Shawn Cutting*, Dkt. 18-1 at 10). Although neither client was required to sign this agreement prior to investing funds with CTM, it is clear this document was intended to memorialize the terms of the investment contract CTM created with each of its investors.

The Management Agreement makes clear that CTM is Cutting and Cutting is CTM. Their liability is therefore identical.   However, Courtney Lata was only involved in some administrative tasks for CTM, and she is not a party to the contract that Plaintiffs had with Cutting and CTM.

It is undisputed that Plaintiffs deposited funds with CTM, and the Management Agreement clearly states that the funds were deposited so that CTM could manage the funds. The Management agreement also spells out a process for withdrawing funds – penalizing withdrawals within the first 90 days, but otherwise providing an unlimited right to withdraw funds, subject only to a withdrawal processing fee of up to 5%. Prior conduct of the parties also establishes that the

funds deposited with CTM could be withdrawn. In fact, Powell was able to make $50,000 in withdrawals between August 2019 and January 10, 2020 and Plaintiffs provided a transaction log showing withdrawal requests that CTM processed for many different investors.

Plaintiffs have made repeated requests to withdraw funds from their accounts but, as of the date of the hearing, Defendants have not provided a payout or an accounting to Plaintiffs. The assertion by Cutting and CTM that they don't have the funds because they are in the cryptocurrency market is inconsistent with the withdrawal process detailed in the Management Agreement. Further, Defendants have provided no objective evidence to support their claim that there has been a collapse of the cryptocurrency market. In fact, Defendants repeatedly represented to Plaintiffs that despite losses in the market overall, the CTM fund was performing well. According to the earning statements provided to the Court, Defendants Cutting and CTM are indebted, based upon a contract for the direct payment of money, to Powell in the amount of $603,750.35 and Knafo in the amount of $119,375.94.

### 2. The Property is in Danger of Becoming Inaccessible

The Court must determine whether probable cause appears that "the property specifically sought to be attached is a bank account subject to the threat of

imminent withdrawal . . . or is in immediate danger of destruction, serious harm,

concealment, or removal from this state, or of sale to an innocent purchaser, and

the holder of such property threatens to destroy, harm, conceal, remove it from the

state, or sell it to an innocent purchaser." I.C. § 8-502(c)(3).

Based upon the evidence before the Court, the property of CTM and Cutting

that Plaintiffs seek to attach is at risk of concealment from creditors. The Court

also notes that, because Idaho is a community property state, all property acquired

by Janine Cutting is community property and is also subject to attachment. I.C.

§ 32-906.

Despite consistent representations to the Plaintiffs that their investments

were earning money, Cutting and CTM failed to disburse the money back to the

Plaintiffs upon request as envisioned by the Management Agreement. Instead,

Defendants' made an unsubstantiated claim that the cryptocurrency market has

collapsed, and the funds have either disappeared or are no longer accessible. This

claim is at odds with the fact that CTM continued to pay out withdrawals to other

clients at least until August 6, 2020, including a total of $80,000 paid to Cutting's

brother in June and July of 2020. Months have passed, and CTM still has not paid

or provided an accounting to Plaintiffs. This failure to account for the funds, the

disbursement of funds to insiders, and Cutting's two prior convictions for business

fraud all suggest that the funds invested with CTM have been concealed. Thus, the Court finds that the bank accounts belonging to Cutting and CTM are "subject to the threat of imminent withdrawal" and will maintain the writ of attachment for the accounts described in Plaintiffs' application that belong to Cutting and CTM described in the Plaintiffs' application.

In addition, the Court finds that there is evidence that Cutting has attempted to conceal his assets and remove them from the reach of creditors. The Lake View Trust was created in February 2018 and significant assets were transferred to the trust in 2019 and 2020—at the same time that Cutting and CTM weren't paying clients their requested disbursements and CTM was administratively dissolved. Plaintiffs have provided records of payout requests from CTM investors showing that CTM failed to honor payout requests beginning in June 2019. In addition, the Heavenly Hills property was conveyed directly to the Trust in September 2019, and lots 2 and 7 of the Creekridge Estates were conveyed to the Trust on July 24, 2020. Cutting also executed a quit claim deed for the family residence, the Bing Haven property, in May 2019 and the property was titled solely in Janine's name. The Bing Haven Property has since been sold. These transfers suggest an attempt to conceal assets from creditors.

For these reasons, the Court will uphold the previously ordered writ of attachment for the bank accounts identified in the Plaintiffs' application belonging to Shawn Cutting, Janine Cutting, and CTM.

### B.     Fraudulent Transfers

The Court's decision will also extend to assets conveyed by Cutting to third parties Janine Cutting and the Lake View Trust. The Idaho Fraudulent Transfers Act provides that "[a transfer made or obligation incurred by a debtor is voidable as to a creditor, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud" creditors. Idaho Code § 55-913(1)(a). The statute sets forth several factors that are indicia of actual intent to hinder, delay or defraud, including: (1) whether the debtor transferred assets to an insider; (2) whether the debtor was insolvent or became insolvent shortly after the transfer; (3) whether the debtor retained possession of the property after the transfer; (4) whether the debtor was threatened with suit prior to transferring the property; (5) whether the debtor removed or concealed assets. Idaho Code § 55-913(2).

In an action for relief against a transfer pursuant to Section 55-913, a creditor may obtain, among other things, "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law[.]" *See* Idaho Code 55-916(1)(b). A creditor may also obtain

"avoidance of the transfer," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property" and "any other relief the circumstances may require." Idaho Code 55-916(1)(c).   To obtain a final remedy under the Idaho Fraudulent Transfers Act, a creditor must establish the elements of the claim by a preponderance of the evidence. I.C. § 55-913(3). However, the statute, by making attachment and other statutory provisional remedies available to an aggrieved creditor, suggests that the Court may grant such relief if it makes a preliminary determination that there is a reasonable probability that the plaintiff will prevail in its claim of a fraudulent conveyance. Idaho Code § 8-502(e).

Here, for purposes of a prejudgment writ of attachment, the Plaintiffs have established that there is evidence of intent to hinder, delay or defraud. First, the assets were transferred to insiders and Cutting retained control over the transferred assets. For individual debtors, "insiders" include relatives and affiliates of the debtor. I.C. § 55-910(8). An affiliate is "a person substantially all of whose assets are controlled by the debtor." I.C. § 55-910(1). As described above, significant assets were transferred to Janine Cutting and the Lake View Trust. Janine Cutting is Cutting's wife and Cutting and Janine are co-trustees of the Lake View Trust. Thus, Cutting has authority to control the Trust's assets. Further, although Cutting

executed a quit claim deed and the Bing Haven Property was titled solely in Janine Cutting's name, Cutting obtained permits and easements for the property in his name—demonstrating that he still exercised control over the property before it was sold.

Second, Cutting and CTM were insolvent when the transfers were made or became insolvent shortly after. A debtor that "is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent." I.C. § 55-911(2). The transferee or debtor has the burden of proving solvency at the time of the transfer. The evidence before the Court establishes that CTM and Cutting were insolvent at the time assets were transferred to Janine and the Lake View Trust. Plaintiffs have shown that CTM first failed to payout withdrawal requests from investors in June 2019 and Defendants have not persuaded the Court that the requested funds are either not owed or are inaccessible. The Cutting's personal residence, the Bing Haven Property, was titled in Janine Cutting's name in May 2019, and sold in 2020. The vehicles were transferred to the Trust in August 2018, and Lots 2 and 7 of the Creekridge Estates were conveyed to the Trust in July 2020 – all after CTM stopped paying out debts. Thus, Cutting and CTM transferred significant assets while they were insolvent, or

shortly before they became insolvent. These transfers also suggest that Cutting was attempting to conceal assets from creditors.

Finally, several of these transfers occurred after Cutting was threatened with suit on May 20, 2020 by Powell's attorney and on June 8, 2020 by Knafo's attorney. Specifically, the Creekridge Estates lots were purchased in July 2020 and the Bing Haven property was under contract in July 2020 and sold in October 2020. Cutting also obtained a $400,000 loan on the Heavenly Hills property in October 2020. Thus, for purposes of the prejudgment writ of attachment, the Court finds that Cutting transferred assets to Janine and the Lake View Trust with the intent to hinder, delay or defraud creditors and the Plaintiffs' are entitled to a prejudgment writ of attachment.

## ORDER

1. Pursuant to Idaho Code Sections 8-803(e), after considering the showing made by the parties, the Court finds there is a reasonable probability that Plaintiffs will prevail on their claim for the debt owed by Defendants upon a contract for the direct payment of money.

2. The Court further finds there is a reasonable probability that Plaintiffs will prevail on their claim that Defendants have engaged in fraudulent transfers to Janine Cutting and Lake View Trust.

MEMORANDUM DECISION AND ORDER - 12

3.      The Court will maintain the previously ordered prejudgment writ of
attachment against the accounts described in the application for writ
of attachment belonging to Janine Cutting, Shawn Cutting, the Crypto
Traders Fund LP, and Crypto Traders Management, LLC.

4.      The Court will not maintain the Order to attach the accounts of
Courtney Lata.

5.      Pursuant to Idaho Code Sections 8-803(a), 55-913 and 55-916 the
Court now orders that a writ of attachment shall be issued by this
Court to attach the following property:

      (1)      One 2018 Jeep Grand Cherokee 4-Door Wagon;

      (2)      One 2017 Chevrolet Camaro;

      (3)      One 2013 Chrysler 300 4-Door Sedan;

      (4)      One 2012 Ford 350 Truck;

      (5)      One 2012 Volkswagen Jetta;

      (6)      One 2018 Trailer;

      (7)      One 2017 Polaris General 100 EPS Motorcycle;

      (8)      Two 2017 Artic Cat Bearcat 2000 LT ES snowmobiles (1
green/ 1 red);

(9)    Two 2017 Polaris PRO RMK 800 snowmobiles (1 black/ 1 red);

(10)   One 2018 Polaris PRO RMK 800 snowmobile (yellow);

(11)   Heavenly Hills property;

(13)   Lot 2 of Creekridge Estates;

(14)   Lot 7 of Creekridge Estates;

Defendants are hereby restrained and ordered not to transfer, encumber or dispose of this property.

6.     The form of the writ of attachment shall comply with Idaho Code § 8-504 and shall substantially comply with the format set forth in **Exhibits A and B** attached to this Order.

7.     Prior to obtaining a writ of attachment, Plaintiffs are directed to file with the Court a proposed notice to creditors to be posted at the courthouse and published in a newspaper of general circulation within the county in conformity with Idaho Code § 8-504(b). Plaintiffs shall also identify the appropriate newspapers for publication of the notice.

8.     Pursuant to Idaho Code § 8-803(a), the writ of attachment shall be immediately issued by this Court upon Plaintiffs' filing with the Court of a written undertaking in the amount of $100,000 (one hundred

thousand dollars). Within two business days of Plaintiffs' attachment of the accounts and property subject to attachment, Plaintiffs shall file with the Court an additional undertaking in an amount equal to the total amounts subject to attachment (minus $100,000).

9.   Pursuant to Idaho Code § 8-503(b) within two days after the writ is issued and delivered to the proper officer, the Clerk is directed to provide notice that an attachment has been issued against the property of Defendants Crypto Traders Management, LLC, and Shawn Cutting; and third parties Janine Cutting, the Lake View Trust, and the Crypto Traders Fund LP.

DATED: February 4, 2021

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 15**