UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ESTATE OF DAVID POWELL, by and through Ian Powell; and MERAV KNAFO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CRYPTO TRADERS MANAGEMENT, LLC, a dissolved Idaho limited liability company; SHAWN CUTTING, individually and as trustee of the Lake View Trust; COURTNEY LATA, an individual; JANINE CUTTING, individually and as trustee of the Lake View Trust, ASH DEVELOPMENT, LLC, an Idaho limited liability company; GOLDEN CROSS INVESTMENTS, LLC, an Idaho limited liability company; CRYPTO TRADERS FUND, LP, a Delaware limited partnership; and, the LAKE VIEW TRUST,<br><br>Defendants. | Case No. 2:20-cv-00352-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On March 31, 2026, the Court resolved the bulk of the motions then pending in this long-running case. *See* Dkt. 212. The Court granted the motions to dismiss filed by Defendants Courtney Lata and Ash Development, LLC; dismissed the remaining claims against the Lake View Trust and Crypto Traders Fund, LP; and dismissed any unadjudicated claims against *pro se* Defendants Shawn and Janine Cutting—all for

Plaintiffs' failure to appear with new counsel and prosecute this action. The Court entered partial final judgment as to those non-debtor defendants under Federal Rule of Civil Procedure 54(b).

Two matters were left unresolved. Because Shawn and Janine Cutting had filed a petition for Chapter 7 bankruptcy, the automatic stay under 11 U.S.C. § 362(a) barred the Court from (1) ruling on the Cuttings' request to vacate the summary judgment entered against them, and (2) adopting Plaintiffs' damages calculation and entering a monetary judgment against Shawn Cutting and Crypto Traders Management, LLC ("CTM"). The Court therefore deemed the Cuttings' request to vacate withdrawn, deferred the damages calculation, and stayed and administratively closed the case as to Shawn Cutting, Janine Cutting, CTM, and Golden Cross Investments, LLC pending resolution of the bankruptcy. *See* Dkt. 212.

The circumstances giving rise to the stay have since changed. On May 5, 2026, the Bankruptcy Court entered an order denying the Cuttings' discharge under 11 U.S.C. §§ 727(a)(2)–(7) and (a)(10). The automatic stay has therefore terminated by operation of law. For the reasons that follow, the Court will lift the stay, reopen the case, deny the Cuttings' request to vacate summary judgment, adopt Plaintiffs' damages calculation, deny Cutting's ex parte motion to discharge the writ of attachment as moot, and enter final judgment.

## BACKGROUND

The Court set forth the factual and procedural background of this case at length in its Memorandum Decision and Order entered March 28, 2024, and again in its March 31,

2026 Order. A brief summary suffices here. Shawn Cutting ran a cryptocurrency Ponzi scheme through his company, CTM. He systematically misappropriated investor funds while sending falsified account statements showing fabricated returns. Plaintiffs David Powell[1] and Merav Knafo invested a combined total of approximately $611,654.94 in Cutting's fraudulent cryptocurrency fund and lost substantially all of their investments.

On March 28, 2024, the Court issued a decision resolving the bulk of this case. The Court granted summary judgment against Shawn Cutting and default judgment against CTM on Plaintiffs' claims for violations of federal and state securities law (Counts 1-3), violation of the Idaho Consumer Protection Act (Count 5), fraud (Count 6), and breach of contract (Count 7). The Court awarded punitive damages on Plaintiffs' fraud and ICPA claims against Cutting and CTM. On Plaintiffs' fraudulent transfer claim (Count 9), the Court granted summary judgment in part against Janine Cutting for disgorgement in the amount of $34,012.09, denied summary judgment against the Lake View Trust, and entered default judgment against Golden Cross equal to Plaintiffs' other claims up to $1,112,789.02. The Court denied summary judgment against Lata and dismissed the ICPA claim against her for lack of a contractual relationship.

At the Court's request, Plaintiffs timely filed their damages calculation on April 11, 2024. *See* Dkt. 201. Plaintiffs calculated their actual damages against Cutting and CTM, including prejudgment interest through April 15, 2024, as $666,450.74 for David

[1] Plaintiff David Powell passed away on July 20, 2023. On February 1, 2024, the Court granted the motion to substitute The Estate of David Powell, by and through Ian Powell, personal representative, as a plaintiff in place of David Powell pursuant to Fed. R. Civ. P. 25(a). For clarity, the Court continues to refer to the plaintiff as David Powell.

Powell and $144,052.34 for Merav Knafo, with interest continuing to accrue thereafter at the Idaho statutory rate. In addition, Plaintiffs sought punitive damages against Cutting in the amount of $250,966.50 for Powell and $54,860.94 for Knafo.

Shortly after Plaintiffs filed their damages calculation, and before the Court could enter partial judgment under Rule 54(b) against the Cuttings, CTM, and Golden Cross, Shawn and Janine Cutting filed a Chapter 7 bankruptcy petition on April 16, 2024. That case was eventually dismissed. On March 13, 2025, the Cuttings refiled for Chapter 7 bankruptcy as Case No. 25-20068-NGH. Because no partial judgment had been entered under Rule 54(b) against any defendant, the Court's March 2024 summary judgment decision remained interlocutory, with claims against Lata, Ash, and the Lake View Trust still pending for trial.

Meanwhile, on March 24, 2024, in a related case filed by the U.S. Securities and Exchange Commission against the Cuttings, CTM, and their various entities, *SEC v. Crypto Traders Management, et al.*, No. 2:21-cv-00103-BLW, final judgment was entered against Shawn Cutting for a civil penalty of $6,899,969; against Janine Cutting for disgorgement of $57,916 together with prejudgment interest of $1,404; and against the other entities, including Golden Cross Investments and the Lake View Trust, for disgorgement.

After nearly two years of relative inactivity, the parties filed a Joint Status Report on December 17, 2025, advising the Court of the pending bankruptcy and Plaintiffs' counsel's intent to withdraw. *See* Dkt. 203. The Court granted counsel's unopposed motion to withdraw on January 13, 2026, and advised Plaintiffs that they had twenty-one

days from the filing of the proof of service to file written notice stating how and by whom they would be represented, failing which the action would be dismissed with prejudice without further notice under Dist. Idaho Loc. Civ. R. 83.6(c)(2). *See* Dkts. 206, 207. The twenty-one-day deadline expired on February 3, 2026. Once the deadline expired, Plaintiffs neither retained new counsel nor appeared *pro se*.

On February 4, 2026, Defendants Lata and Ash moved to dismiss the claims against them with prejudice. *See* Dkt. 208. On February 9, 2026, Shawn and Janine Cutting filed their own Motion to Dismiss with Prejudice. Dkt. 211. In addition to seeking dismissal based on Plaintiffs' failure to appear, the Cuttings' motion asked the Court to "vacate the default judgment previously entered against them" and to dismiss all claims against them with prejudice in their favor.[2] A few days earlier, on February 6, 2026, Shawn Cutting had separately filed an Ex Parte Motion to Discharge the Writ of Attachment (Dkts. 209, 210), contending that the prejudgment attachment of his assets had become "irregular" because the security bond had lapsed, and that the continued seizure of his property was causing him irreparable harm.

In its March 31, 2026 Memorandum Decision and Order, the Court granted Lata and Ash Development's motion, dismissed the claims against the Lake View Trust and Crypto Traders Fund, LP, and dismissed any unadjudicated claims against the Cuttings—all with prejudice for failure to prosecute. *See* Dkt. 212. The Court entered partial final

[2]Although the Cuttings' motion is captioned as seeking dismissal of the "entire action against all defendants," Shawn and Janine Cutting lack standing to seek dismissal on behalf of other defendants. The Court therefore construes the motion as seeking relief only as to the Cuttings themselves.

judgment as to those non-debtor defendants under Rule 54(b). But because the Cuttings' bankruptcy had triggered the automatic stay, the Court declined to reach their request to vacate the summary judgment and deferred adoption of Plaintiffs' damages calculation as to Shawn Cutting and CTM. The Court deemed both the Cuttings' request to vacate and Cutting's ex parte motion to discharge the writ of attachment (Dkts. 209, 210) withdrawn, without prejudice to refiling once the bankruptcy concluded; stayed and administratively closed the case as to Shawn Cutting, Janine Cutting, CTM, and Golden Cross; and directed the Cuttings to file periodic status reports.

The discharge proceedings have since concluded. As reflected in a status report filed in a related case brought by another defrauded investor, *see Guler v. Crypto Traders Management, LLC*, No. 2:21-cv-00116-BLW (Dkt. 47), the Bankruptcy Court entered an Order Denying Debtors' Discharge on May 5, 2026, pursuant to the Cuttings' own stipulated waivers and a stipulation with the United States Trustee. The discharge was denied under 11 U.S.C. §§ 727(a)(2)–(7) and (a)(10). The adversary proceeding challenging discharge was dismissed on May 13, 2026.

## ANALYSIS

### A. The Stay Is Lifted and the Case Is Reopened

The automatic stay under 11 U.S.C. § 362(a) terminated as to the Cuttings by operation of law when the Bankruptcy Court denied their discharge. Section 362(c)(2)(C) provides that the stay of acts against the debtor continues only until the earliest of three events: the case is closed, the case is dismissed, or "a discharge is granted or denied."

The Bankruptcy Court's May 5, 2026 order denying discharge triggered the third condition, and the automatic stay is no longer in effect as to Shawn and Janine Cutting.

It bears emphasis that the Cuttings' discharge was denied—not granted. The debts at issue in this case were therefore not discharged and remain fully enforceable against the Cuttings personally. The denial was entered under 11 U.S.C. §§ 727(a)(2) through (7) and (a)(10), which encompass some of the most serious grounds for denial of discharge, including the concealment of property, false oaths, and the failure to explain a loss of assets. That the Cuttings stipulated to the denial of their own discharge is entirely consistent with the pattern of misconduct established in this case.

The Court's extension of the stay to CTM and Golden Cross was a discretionary measure, predicated on the existence of the automatic stay and the inextricable intertwining of those entities' interests with the Cuttings'. *See* Dkt. 212. With the automatic stay no longer in effect, the rationale for extending that protection to the entities has evaporated. The Court will therefore lift the stay as to all four stayed defendants—Shawn Cutting, Janine Cutting, CTM, and Golden Cross—and reopen the case.

**B. The Cuttings' Request to Vacate**

With the stay lifted, the Court takes up the one aspect of the Cuttings' motion it could not previously address: their request to vacate the summary judgment entered against them and to dismiss all claims in their favor. In its March 31 Order, the Court deemed that request withdrawn without prejudice, because the automatic stay barred the Court from considering it. The request is now properly before the Court, and it is denied.

First, the Court must correct a mischaracterization: it did not enter "default judgment" against the Cuttings. To the contrary, the Court expressly declined to enter default judgment against the Cuttings for their failure to appear, and instead granted summary judgment against them only after giving Shawn Cutting an opportunity to appear at the hearing and carefully considering the merits of Plaintiffs' motion. *See* Dkt. 200 at 22.[3] The Cuttings cannot rely on Plaintiffs' later failure to prosecute the remaining, unadjudicated claims as a basis to vacate or set aside the prior summary judgment entered against them on the merits.

Even construed as a motion to vacate under Rule 60(b), the Cuttings' request fares no better. Rule 60(b)(1) permits relief from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," but a motion on that ground must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1). The request fails on both timing and substance. The Court granted summary judgment against the Cuttings in March 2024; the Cuttings did not seek to vacate it until February 2026—nearly two years later, and well outside the one-year window. And in all events, the Cuttings have identified no basis for relief under Rule 60(b)(1). Plaintiffs' failure to prosecute their remaining claims is neither a "mistake" nor an "extraordinary circumstance" that would justify relief from a merits determination that went against the Cuttings. The request to vacate is denied.

---

[3]The Cuttings appear to confuse the summary judgment entered in the Court's March 28, 2024 decision with a "default judgment." The Court expressly declined to enter default judgment against the Cuttings and instead resolved the motion for summary judgment on the merits. *See* Dkt. 200, at 22 ("[T]he Court will not enter default judgment against the Cuttings and instead will decide the summary judgment on the merits.").

In sum, the summary judgment entered against Shawn Cutting on Counts 1-3 and 5-7, the partial summary judgment entered against Janine Cutting on the fraudulent transfer claim (Count 9), the default judgment entered against CTM, and the related award of punitive damages all stand undisturbed.

**C. Plaintiffs' Damages Calculation and Entry of Judgment**

With the stay lifted, the Court turns at last to Plaintiffs' damages calculation. Following the Court's decision granting summary judgment against Shawn Cutting and default judgment against CTM, Plaintiffs submitted a calculation setting forth their total claimed damages, including prejudgment interest and punitive damages. *See* Dkt. 201. The Court has reviewed that calculation and finds it consistent with the Court's prior rulings. The Court therefore adopts it and awards Plaintiffs their compensatory damages, including prejudgment interest under Idaho Code § 28-22-104, of $666,450.74 for David Powell (now the Estate of David Powell) and $144,052.34 for Merav Knafo, each calculated as of April 15, 2024, with prejudgment interest continuing to accrue thereafter at the statutory rate through the date judgment is entered.

The Court also approves Plaintiffs' request for punitive damages at a multiplier of 0.5 times compensatory damages. Under the factors set forth in *Myers v. Workmen's Auto Insurance Co.*, 95 P.3d 977, 988–89 (Idaho 2004)—including the prospective deterrent effect of the award, the motives actuating Cutting's conduct, the degree of calculation involved, and the extent of his disregard for the rights of others—the requested award is plainly appropriate. Cutting's conduct was egregious and calculated: he systematically misappropriated investor funds, diverting them to his own personal expenditures—at

stores, resorts, and gas stations—while sending out falsified account statements showing fabricated returns. There are no mitigating circumstances. A 0.5-to-1 ratio is modest, and falls comfortably within the constitutional guardrails of *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). The Court awards punitive damages of $250,966.50 for Powell and $54,860.94 for Knafo.

Because the stay no longer bars entry of judgment, the Court will enter final judgment against Shawn Cutting and CTM in these amounts. Consistent with the Court's March 28, 2024 decision, judgment will also enter against Janine Cutting for disgorgement of $34,012.09 on the fraudulent transfer claim, and against Golden Cross on that claim in an amount equal to Plaintiffs' other claims, up to $1,112,789.02. Post-judgment interest will accrue on the full judgment under 28 U.S.C. § 1961.

**D. The Ex Parte Motion to Discharge the Writ of Attachment**

That leaves Cutting's Ex Parte Motion to Discharge the Writ of Attachment (Dkts. 209, 210). In February 2021, the Court granted Plaintiffs' application for a prejudgment writ of attachment against Cutting's assets to secure any judgment Plaintiffs might recover, and Plaintiffs posted the security undertaking required by Idaho Code § 8-503. *See* Dkt. 40. Cutting now seeks to discharge that writ, arguing that the attachment has become "irregular" under Idaho Code § 8-534 because the security bond has lapsed, and that the continued seizure of his property is causing him irreparable harm.

The Court deemed this motion withdrawn in its March 31 Order, and Cutting has not refiled it. In any event, the entry of judgment moots it. A writ of attachment is a

prejudgment, provisional remedy; its office is to hold the defendant's property "as security for the satisfaction of any judgment that may be recovered." Idaho Code § 8-501. Once the plaintiff recovers that judgment, the attached property no longer awaits a "potential" judgment—it stands to satisfy an actual one, and the sheriff must apply it to that end. *See* Idaho Code §§ 8-505, 8-528. Discharge of the attachment would be required only had the opposite occurred—had the defendant prevailed. *See* Idaho Code § 8-531 ("If the defendant recover judgment against the plaintiff ... [t]he order of attachment shall be discharged, and the property released therefrom."). Cutting's arguments—that the prejudgment attachment is "irregular" for want of a current bond, and that the provisional seizure is working irreparable harm—are aimed at a posture that today's judgment brings to an end. With the writ now standing to satisfy the judgment rather than to secure a contingent one, there is nothing left to discharge. The motion is denied as moot.

## ORDER

**IT IS HEREBY ORDERED** as follows:

1. The stay imposed by the Court's March 31, 2026 Memorandum Decision and Order (Dkt. 212) is **LIFTED** as to Defendants Shawn Cutting, Janine Cutting, Crypto Traders Management, LLC, and Golden Cross Investments, LLC.

2. The Clerk is directed to **REOPEN** this case.

3. Defendants Shawn and Janine Cutting's Motion to Dismiss (Dkt. 211), to the extent it seeks to vacate the summary judgment entered in the Memorandum Decision and Order of March 28, 2024 (Dkt. 200) and to dismiss the adjudicated claims in their favor, is

**DENIED**. The remainder of the motion was resolved by the Court's March 31, 2026 Order (Dkt. 212).

4. The Court **ADOPTS** Plaintiffs' Damage Calculation (Dkt. 201) and **APPROVES** Plaintiffs' request for punitive damages at a multiplier of 0.5 times compensatory damages, for the reasons set forth above.

5. Defendant Shawn Cutting's Ex Parte Motion to Discharge the Writ of Attachment (Dkts. 209, 210) is **DENIED** as moot.

6. In a separate document filed concurrently with this Order, final judgment shall be entered pursuant to Federal Rule of Civil Procedure 58(a) as follows:

a. Judgment in favor of Plaintiffs the Estate of David Powell and Merav Knafo, and against Defendants Shawn Cutting and Crypto Traders Management, LLC, jointly and severally: compensatory damages, including prejudgment interest under Idaho Code § 28-22-104, of $666,450.74 for the Estate of David Powell and $144,052.34 for Merav Knafo, each calculated as of April 15, 2024, with prejudgment interest continuing to accrue at the statutory rate through the date of entry of judgment; and punitive damages of $250,966.50 for the Estate of David Powell and $54,860.94 for Merav Knafo.

b. Consistent with the Court's March 28, 2024 Memorandum Decision and Order (Dkt. 200), judgment against Defendant Janine Cutting for disgorgement of $34,012.09, and against Defendant Golden Cross

Investments, LLC on the fraudulent transfer claim in an amount equal to Plaintiffs' other claims, up to $1,112,789.02.

c. Post-judgment interest shall accrue on the full judgment amount, including the prejudgment-interest component, at the rate prescribed by 28 U.S.C. § 1961, from the date of entry of judgment until the judgment is satisfied.

DATED: August 26, 2026

B. Lynn Winmill
U.S. District Court Judge